**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2019-0735, <u>In the Matter of Arnold Goddard and Racheal Goddard</u>, the court on November 2, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. See <u>Sup. Ct. R.</u> 18(1). We affirm.

The respondent, Racheal Goddard (wife), appeals a final decree of divorce from the petitioner, Arnold Goddard (husband). She argues that the Circuit Court (<u>Forrest</u>, J.) erred by upholding the validity of a prenuptial agreement. She further argues that the Trial Court (<u>DalPra</u>, M., approved by <u>Gleason</u>, J.) erred by not awarding the full amount of alimony she sought, and by denying her requests for payment of certain expenses.

We first address the wife's challenges to the validity of the prenuptial agreement.

> A prenuptial agreement is presumed valid unless the party seeking the invalidation of the agreement proves that: (1) the agreement was obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of a material fact; (2) the agreement is unconscionable; or (3) the facts and circumstances have so changed since the agreement was executed as to make the agreement unenforceable.

<u>In the Matter of Nizhnikov & Nizhnikov</u>, 168 N.H. 525, 528 (2016). We will not disturb the court's decree unless it is unsupported by the evidence or erroneous as a matter of law. <u>Id</u>. We defer to the trial court's findings of fact unless they are so plainly erroneous that they could not be reasonably made. <u>Id</u>.

The wife first argues that the prenuptial agreement is invalid because it was obtained through duress. To establish duress, a party ordinarily must show that the party "involuntarily accepted the other party's terms, that the coercive circumstances were the result of the other party's acts, that the other party exerted pressure wrongfully, and that under the circumstances the party had no alternative but to accept the terms set out by the other party." <u>Id</u>. (quotation omitted).

The record shows that the parties had been married to each other previously and that, after a 31-year marriage, they had divided their marital assets equally pursuant to a stipulated divorce agreement. As a result of that agreement, the husband retained the marital home, for which the wife received an offsetting payment of $72,500. The wife also received a payment of $16,923.82, which was half the value of the husband's retirement account, and an undeveloped parcel of real estate valued at $35,000. The record shows that, by the time the parties entered into the prenuptial agreement, the wife had depleted nearly all of the assets she had received in the first divorce, except for the real estate. The husband testified that he sought a prenuptial agreement before remarrying the wife because he was concerned about the possibility that the wife would again seek half of the marital estate in the event of divorce. He testified that he found a form prenuptial agreement on the internet, which he used without consulting an attorney. He testified that he discussed the agreement with the wife, that they had completed the form weeks before signing it, and that they executed it in the presence of a notary, two days before the marriage.

The wife argues that she had no opportunity to seek counsel and that she signed the agreement because she was completely reliant upon the husband for financial support. The trial court found that the parties had discussed the agreement for several weeks, and that the wife was aware that, under the agreement, she would not receive any of the husband's assets if the parties again divorced. The court found that the husband did not threaten to make the wife leave the residence or otherwise pressure her to sign the agreement. We conclude that the record supports the trial court's finding that the wife did not sign the agreement under duress. See In the Matter of Nizhnikov, 168 N.H. at 528.

The wife next argues that the agreement is unconscionable. Provisions in a prenuptial agreement may be invalidated if enforcement would cause "unconscionable hardship" as a result of changed circumstances sufficient to compel judicial reformation of the agreement. MacFarlane v. Rich (MacFarlane), 132 N.H. 608, 616-17 (1989). The wife argues that such circumstances exist in this case because she used proceeds from the sale of her real estate to make improvements to the marital residence, which belongs to the husband. The trial court found that the parties' son converted a deck to a three-season room at the cost of approximately $5,000.00. The court concluded that, even if the funds for the project were derived from the sale of the wife's real estate, this circumstance does not render the prenuptial agreement unconscionable. We conclude that the record supports the court's finding. See In the Matter of Nizhnikov, 168 N.H. at 528.

The wife also argues that the agreement is unconscionable because of the disparity in the parties' assets and income. When the parties signed the agreement, the husband owned the former marital residence valued at

2

$255,800 (subject to a $132,495 mortgage), retirement assets valued at $56,331, and motor vehicles valued at $6,773. He was earning $42,118 per year. The wife, by contrast, had real estate valued at $35,500 and $1,200 in cash. She was receiving disability income of $6,792 per year. The court concluded that the agreement was unconscionable to the extent that it precluded the wife from receiving alimony. We conclude that the record supports the court's finding, and its implied determination that only the alimony provision required judicial reformation. See MacFarlane, 132 N.H. at 616-17; see also Newman v. Newman, 653 P.2d 728, 735 (Colo. 1982) (cited in MacFarlane).

We next address the wife's challenge to the alimony award. The trial court is afforded broad discretion in awarding alimony. In the Matter of Nassar & Nassar, 156 N.H. 769, 772 (2008). We will not overturn its decision unless it is lacking in evidentiary support or legally erroneous. Id. Based upon its review of the parties' financial circumstances, the court found that the wife needs alimony, and that the husband has the ability to pay $250 per month in alimony for four years or until his retirement, whichever occurs earlier. The wife argues that the court erred in denying her request for $500 per month in alimony which, she asserts, the husband could pay with his assets. Based upon this record, we find no error in the court's alimony award. See id.

Finally, the wife argues that the trial court erred in denying her request to be reimbursed for moving and dental expenses, and for $7,500 to purchase a motor vehicle. We afford trial courts broad discretion in fashioning a final divorce decree. In the Matter of Ramadan & Ramadan, 153 N.H. 226, 232 (2006). The court found that the wife's request for $7,500 was a claim against the marital estate, contrary to the terms of the prenuptial agreement. The court also found that the wife's request to be reimbursed for moving expenses was not justified given her failure to timely vacate the residence. We conclude that the wife has failed to demonstrate that the trial court unsustainably exercised its discretion in denying her requests for reimbursement of expenses and for funds to purchase a vehicle. See id.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

3